UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

In Re: MONTREAL MAINE & ATLANTIC RAILWAY, LTD.   )   Civil Nos.   1:13-mc-00184-NT
                                                                 1:14-cv-00071-NT
                                                                 1:14-cv-00113-NT
                                                                 through and including
                                                                 1:14-cv-00130-NT

**ORDER AMENDING AND RESTATING CONSENT ORDER STAYING PROCEEDINGS PENDING APPEAL IN 1:13-mc-00184-NT**

This matter having come before the Court on the *Motion for Order Modifying Consent Order Staying Proceedings Pending Appeal in 1:13-mc-00184-NT* (ECF No. 255) (the "Motion"), filed by Annick Roy (o/b/o Jean-Guy Veilleux), Marie-Josee Grimard (o/b/o Henriette Latulippe) and Robert Keach, the chapter 11 trustee of Montreal Maine & Atlantic Railway, Ltd. (the "**Trustee**" and together, the "**Movants**") in case 1:13-mc-00184-NT, seeking entry of an order modifying the "Consent Order Staying Proceedings Pending Appeal in 1:13-mc-00184-NT (ECF No. 253) ("**Original Stay Order**"); and due and appropriate notice of the Motion having been given; and the Court having reviewed the Motion and having considered any objections and/or responses to the Motion and with the express consent of the Movants and the Official Committee Of Victims appointed in the chapter 11 case in which Montreal, Maine and Atlantic Railway, Ltd. ("**MMR**" or the "**Debtor**") is a debtor pending in the United States Bankruptcy Court for the District of Maine; the Court hereby **ORDERS** that:

1

1. The Motion is granted to the extent and upon the terms set forth herein.

2. All of the civil actions transferred to this Court pursuant to the Court's *Order on Motions to Transfer Cases and Motion to Strike* (ECF No. 100) (the "**Section 157(b)(5) Transfer Order**"), and all proceedings therein, are hereby stayed against all defendants as set forth in this Order. The civil actions subject to this stay include eighteen civil actions pending in this Court with the following assigned docket numbers:

| | |
|---|---|
| 1:14-cv-00113-NT | 1:14-cv-00122-NT |
| 1:14-cv-00114-NT | 1:14-cv-00123-NT |
| 1:14-cv-00115-NT | 1:14-cv-00124-NT |
| 1:14-cv-00116-NT | 1:14-cv-00125-NT |
| 1:14-cv-00117-NT | 1:14-cv-00126-NT |
| 1:14-cv-00118-NT | 1:14-cv-00127-NT |
| 1:14-cv-00119-NT | 1:14-cv-00128-NT |
| 1:14-cv-00120-NT | 1:14-cv-00129-NT |
| 1:14-cv-00121-NT | 1:14-cv-00130-NT |

By agreement with the plaintiff in *Grimard v. Western Petroleum Company* (which case was transferred pursuant to the 157(b)(5) Transfer Order, although the physical file has not been transferred by the Clerk of the Circuit Court of Cook County (Illinois)), that case is also subject to the stay contained in this Order. All nineteen of the civil actions described in this Paragraph 2 are referred to collectively as the "**Transferred Actions**."

3. As of June 17, 2014 (the date the Original Stay Order was entered on the docket in this case), all deadlines applicable to the Transferred Actions, whether imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District Maine or by applicable law, shall be tolled until the

stay is terminated pursuant to Paragraph 6 of this Order. Upon the termination of the stay, the parties to the Transferred Actions shall confer upon an appropriate scheduling order. For the avoidance of doubt, the stay imposed by the Order is for procedural purposes only and shall not affect the substantive rights of any parties to the Transferred Actions.

4. Without limiting the foregoing, during the stay imposed by this Order:

   a. the Court will not rule on the pending *Motion of Wrongful Death Claims for Mandatory Abstention* (ECF No. 227), filed by some of the Movants on or about April 4, 2014.

   b. None of the plaintiffs or plaintiffs' counsel in the Transferred Actions may treat any of the Transferred Actions as dismissed and/or file, re-file or recommence any of the Transferred Actions (including new cases on behalf of any party that is a plaintiff in any of the Transferred Actions) relating to the derailment of one of MMA's trains in Lac-Mégantic, Québec on July 6, 2013 (the "**Derailment**") in their current, new, or any altered form against all or any subset of the current defendants in the Transferred Actions.

   c. Plaintiff's counsel may represent parties not already plaintiffs in the Transferred Actions in newly commenced cases against any or any subset of the current defendants in the Transferred Actions by persons not plaintiffs in the Transferred Actions (the "**New Cases**"), provided, however, that no New Cases related to the Derailment shall be filed against any of the persons or entities listed on Schedule A to this Order (each a "**Settling Defendant**" and collectively the "**Settling Defendants**") other than as permitted pursuant to the applicable settlement agreement between and among the Trustee and each Settling Defendant. As a condition to any such stay of the filing of New Cases against the Settling Defendants arising out of the Derailment, all such Settling Defendants shall agree (by consent to this Order or by signing a tolling agreement reasonably satisfactory to the Plaintiff's counsel) that any and all applicable statutes of limitations against each such Settling Defendant with respect to any claims or potential claims that can be asserted by any person asserting a wrongful death claim relating to the Derailment (including, without limitation, the plaintiffs) shall be tolled during the period of the stay imposed by this Order and the Original Stay Order.

d. Nothing herein shall prejudice (i) the rights (if any) of parties in the New Cases to file motions, pleadings, oppositions or other documents in the courts in which the New Cases are commenced; (ii) the right of the Trustee to seek or any other party to oppose confirmation of a chapter 11 plan ("**Plan**") in the Chapter 11 Case, as defined below, on any grounds, including, without limitation, a Plan that purports to enjoin the prosecution of New Cases or release any of the defendants in New Cases; and (iii) the right of any party or entity to seek, and the right of any party to oppose, an order under 11 U.S.C. §§ 1507, 1519, or 1521, or otherwise under standards of international comity, which order recognizes and enforces any order issued in the CCAA proceedings of Montreal Maine & Atlantic Canada Co. which provides for releases of settling defendants and/or a permanent injunction against suits against settling defendants and other persons as to any and all claims arising out of the Derailment. Subject to the terms and conditions of this Agreed Order, all parties shall also retain all rights with respect to any and all disputes regarding whether any of the New Cases should be transferred to this Court, and all such rights are reserved pending this Court's determination of any such dispute that may arise.

5. The stay imposed by this Order only applies to the Transferred Cases and, with respect to Settling Defendants, to the extent set forth above to any New Cases that might be brought against any Settling Defendant. For avoidance of doubt, the stay imposed by this Order does not apply (i) to any proceedings or contested matters in the underlying chapter 11 bankruptcy case of Montreal Maine & Atlantic Railway, Ltd. ("**MMA**") currently pending before the United States Bankruptcy Court for the District of Maine (the "Chapter 11 Case"), (ii) to any contested matters or adversary proceedings in the Chapter 11 Case, or (iii) to the proceeding commenced by Montreal Maine & Atlantic Canada Co., MMA's wholly-owned subsidiary ("**MMAC**"), under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, C-36, as amended, currently pending before the Quebec Superior of Justice (Commercial Division)(the "**Canadian Case**"), or any matters in that proceeding. Without

limiting the foregoing, nothing in this Order shall limit in any way the ability of the Trustee, MMAC, or the monitor in the Canadian Case from proposing, and any other party from objecting, in connection with a Plan or in the Canadian Case, that the prosecution of the Transferred Cases and/or the New Cases be permanently enjoined and that any or all of the defendants in such cases be released from any and all claims held by any or all of the plaintiffs in such cases or held or asserted by any other persons or entities.

6. The stay imposed by this Order will terminate on the earlier of (i) the entry of an Order of this Court dissolving the stay, (ii) the final disposition of the appeal taken by the Movants, *inter alia*, of the Section 157(b)(5) Transfer Order currently pending before the United States Court of Appeals for the First Circuit, Case No. 14-1485, and (iii) 30 days after notice is filed on this Court's docket by any of the parties to any of the Transferred Cases or the Official Committee of Victims, provided, however, that termination of the stay pursuant to (iii) of this Paragraph shall be without prejudice to the rights of any party or the Official Committee of Victims to seek to reimpose the stay and the Court to grant such request.

7. Nothing in this Order will prejudice the rights of any person or entity with respect to the contention that some of the Transferred Actions were or were not voluntarily dismissed by the plaintiffs pursuant to Fed. R. Civ. P. 41(a). All such rights are hereby preserved, but any acts with respect to such rights, if any, are stayed as set forth above. The motions to strike notices of dismissal are withdrawn without prejudice to the rights of defendants to refile any such motion, and the rights

of any other party to oppose any such motion, with the status quo continuing in the interim.  The statutes of limitation with respect to any and all claims and causes of action relating to the Derailment asserted or that could be asserted in the Transferred Cases shall be and hereby are tolled during the period of the stay imposed pursuant to the Original Stay Order and this Order.

It is further **ORDERED** that the parties shall file status reports every 60 days from the date of this Order.

**SO ORDERED**.

/s/ Nancy Torresen  
United States Chief District Judge

Dated this 23rd day of March, 2015.

**EXHIBIT A TO ORDER AMENDING AND RESTATING CONSENT ORDER STAYING PROCEEDINGS PENDING APPEAL IN 1:13-mc-00184-NT**

The list below consists of the parties who have (a) either executed settlement agreements with Montreal Maine & Atlantic Canada Co. ("MMAC") and Robert J. Keach in his capacity as Chapter 11 Trustee of Montreal, Maine & Atlantic Railway Ltd. (the "Trustee"); or (b) have agreed upon the terms of settlement agreements (collectively, the "Settling Defendants"). To the extent any Settling Defendant fails to execute within the next five (5) business days the relevant settlement agreement, MMAC and the Trustee reserve the right to amend this list to remove any such Settling Defendant and to so inform the Court.  Nothing in this list shall supersede, effect, modify or amend any such settlement agreement and to the extent of any conflict between the descriptions in this list and any such settlement agreement, the settlement agreement shall govern.  All such settlement agreements are subject to court approval and other conditions, and the inclusion of any person or entity on this list does not create or imply the release of such person or entity from any claim; in all respects, the settlement agreements, and the court orders pertaining to the settlement agreements, shall govern.  The Settling Defendants are as follows:

**Devlar Energy Marketing LLC ("Devlar"), Oasis Petroleum Inc. and Oasis Petroleum LLC (jointly, "Oasis"),** as well as the entities identified in the Schedule attached to the Settlement Agreement with Oasis, but strictly as non-operating working interest owners or joint venturers in the specific Oasis-operated wells that produced oil that was provided and supplied by Oasis that was transported in the train involved in the Derailment.

**Inland Oil & Gas Corporation, Whiting Petroleum Corporation, Enerplus Resources (USA) Corporation, Halcón Resources Corporation, Tracker Resources, Kodiak Oil & Gas Corp. (now known as Whiting Canadian Holding Company, ULC) and Golden Eye Resources LLC**, but strictly as non-operating working interest owners or joint venturers in any wells that produced oil that was provided, supplied and transported in the train involved in the Derailment.

**Arrow Midstream Holdings CCC**.

**Marathon Oil Company ("Marathon")**, as well as the entities identified in the Schedule attached to the Settlement Agreement with Marathon, but strictly as non-operating working interest owners or joint venturers in the specific Marathon-operated wells that produced and supplied oil that was transported on the train involved in the Derailment.

**QEP Resources, Inc. ("QEP")**, as well as those entities identified in the Schedule attached to the Settlement Agreement with QEP, but strictly as non-operating working interest owners or joint venturers in the specific QEP-operated wells that produced and supplied oil that was transported on the train involved in the Derailment.

**Slawson Exploration Company, Inc. ("Slawson")**, as well as those entities identified in the Schedule attached to the Settlement Agreement with Slawson, but strictly as non-operating working interest owners in the specific Slawson-operated wells that produced oil that was transported on the train involved in the Derailment.

**Indian Harbor Insurance Company, XL Insurance, XL Group plc** (strictly as insurers of MMA and MMAC).

**The Directors and Officers of MMA and MMAC**.

**Hartford Casualty Insurance Company** (strictly as insurer of Rail World, Inc.).

**Chubb Insurance Group and its subsidiary Federal Insurance Company** (strictly as insurers of Rail World, Inc. and Rail World Holdings, LLC).

**Rail World Holdings LLC; Rail World, Inc.; Rail World Locomotive Leasing LLC; The San Luis Central R.R. Co.; Pea Vine Corporation; LMS Acquisition Corporation; MMA Corporation; Earlston Associates L.P.**

**General Electric Railcar Services Corporation and General Electric Company**

**Trinity Industries, Inc., Trinity Industries Leasing Company, Trinity Tank Car, Inc., and Trinity Rail Leasing 2012 LLC, Trinity Rail Group LLC, RIV 2013 Rail Holdings LLC, and Trinity Rail Leasing Warehouse Trust**

**Union Tank Car Company ("UTCC"), the UTLX International Division of UTCC, The Marmon Group LLC and Procor Limited**

**First Union Rail Corporation**

**CIT Group, Inc.**

**ConocoPhillips Company ("ConocoPhillips"),** as well as those entities identified in the Schedule attached to the Settlement Agreement with ConocoPhillips, but strictly as non-operating working interest owners in the specific ConocoPhillips operated wells that produced and supplied oil that was transported on the train involved in the Derailment.

**Shell Oil Company and Shell Trading (US) Company**

**Incorr Energy Group LLC**

**Enserco Energy, LLC**

**The Attorney General of Canada, the Government of Canada, Her Majesty the Queen in Right of Canada**

**Irving Oil Limited, Irving Oil Company Limited, Irving Oil Operations General Partner Limited and Irving Oil Commercial G.P.**

The parents, affiliates, predecessors, successors, assigns, directors, officers, agents, employees, and other representative, or related entities of the Settling Defendants listed above, as well as their insurers and reinsurers (but strictly to the extent of coverage afforded to said listed Settling Defendants) are also Settling Defendants, the whole as more fully provided for in each settlement agreement.

Notwithstanding the foregoing or anything else in this list, and without implying or providing any limitation, the term "Settling Defendants" as used herein or above <u>does not include, and shall not be deemed to include</u>, any of the following: (a) Canadian Pacific Railway Company, (b) World Fuel Services Corporation, (c) World Fuel Services, Inc., (d) World Fuel Services, Canada, Inc., (e) Petroleum Transport Solutions, LLC, (f) Western Petroleum Co., (g) Strobel Starostka Transfer LLC, (h) Dakota Plains Marketing LLC, (i) Dakota Plains Holdings, Inc., (j) DPTS Marketing Inc., (k) Dakota Plains Transloading LLC, (l) Dakota Petroleum Transport Solution LLC, and (m) SMBC Rail Services, LLC.